IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Equal Employment Opportunity )
Commission, )
)
Plaintiff, )
) 23-cv-722
v. )
)
Hooters of America, LLC, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The parties jointly ask to extend the discovery deadline and continue the trial.

They have not acted with due diligence or shown good cause, and the motion will be

denied. As the parties have demonstrated that they cannot manage the discovery process

efficiently on their own, court oversight is necessary.

### 1. The Important Role of Scheduling Orders

Scheduling orders entered pursuant to Rule 16 of the Rules of Civil Procedure are

mandatory, Fed. R. Civ. P. 16(b)(1), and serve a vital purpose in helping a court manage

its civil caseload. *See, e.g., Green v. AMF Bowling Ctrs., Inc.*, No. ELH-19-1410, 2020

WL 6204297, at *3–4 (D. Md. Oct. 21, 2020). In an era of crowded dockets, "effective

case management has become an essential tool for handling civil litigation." *Tower*

*Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002). To that end, a

scheduling order is an important vehicle in securing the just, speedy, and inexpensive

determination of every action. *See, e.g.*, Fed. R. Civ. P. 1; *Green*, 2020 WL 6204297, at

*3–4; *Miller v. Transcend Servs., Inc.*, 1:10-CV-362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013). Indeed, it is "the critical path chosen by the trial judge and the parties" to resolve the case fairly and expeditiously. *Marcum v. Zimmer*, 163 F.R.D. 250, 253 (S.D. W. Va. 1995); *see also Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 594 (7th Cir. 2012) ("[D]istrict courts have an interest in keeping litigation moving forward and . . . maintaining respect for set deadlines is essential to achieving that goal.")

Changes to a scheduling order or a trial date affect efficiency and prompt resolution of other cases too. "By reposing ultimate scheduling authority with courts, rather than counsel, Rule 16 advances the goals of fair and efficient case management— not just for the case at hand, but for courts' broader caseloads as well." *N.C. State Conf. of the NAACP v. Cooper*, No. 1:18-CV-1034, 2020 WL 5806484, at *2 (M.D.N.C. May 27, 2020). Changes to scheduling orders and trial dates often—indeed, almost always— impact other cases on the court's docket and often impose new management demands on the court. *Id.* These are the kinds of standard considerations that courts also weigh, "and they make clear why adherence to scheduling orders is so important—even when . . . the parties themselves insist they would not be prejudiced by a later revision." *Id.*

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a schedule entered by court order "may be modified only for good cause and with the judge's consent." Rule 16 thus recognizes "that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004). But the fact that parties will "occasionally" be unable to meet deadlines does not mean that

2

scheduling orders should be modified without a good reason for the delay or in the absence of diligence. Such an approach would be inconsistent with the purpose of the scheduling order itself, with this district's history of strict adherence to discovery schedules,[1] and with the court order entered early in this case directing the parties to "promptly move the case towards final resolution and to build in time for coping with delays and obstacles." Doc. 6 at ¶ 9.

### 2. The Motion to Extend Discovery and Continue the Trial

This case began several months before it was filed, with administrative proceedings before the EEOC. Doc. 1 at ¶ 8–12; Doc. 15 at ¶ 8–12. Suit was initiated over a year ago, on August 24, 2023. Doc. 1. Counsel entered an appearance for the defendant within the month. After obtaining extensions of time, the defendant finally answered in December. Doc. 15. The parties asked for and received 10 months to conduct discovery, *see* Doc. 17 at ¶ 2(d)(1), a long time in this district, especially given that the parties had already engaged in EEOC conciliation proceedings and had already had time to gather their documents and information.

The Initial Pretrial Order was entered in late February 2024, yet the plaintiff did not serve written discovery until the end of April, Doc. 30 at ¶ 6(c), and the defendant delayed sending written discovery until the end of May. Doc. 30 at ¶ 6(f). It took the

---

[1] This history goes back at least to 2005 and continues to this day. *See, e.g., Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 1:03-CV-537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005); *Alston v. Becton, Dickinson & Co.*, No. 1:12-CV-452, 2014 WL 338804, at *3 (M.D.N.C. Jan. 30, 2014); *N.C. State Conf. of the NAACP v. Cooper*, No. 1:18-CV-1034, 2020 WL 5806484, at *2 (M.D.N.C. May 27, 2020).

parties months to submit a proposed Protective Order. Doc. 25. Even though the parties

have been discussing an ESI protocol since January, Doc. 30 at ¶ 6(a), and told the

Court they expected to agree to a protocol by mid-March, Doc. 17 at ¶ 5(k), those

discussions have not yet been productive. Doc. 30 at ¶ 7(a) (asking for a deadline several

weeks from now to submit an ESI proposal).

The defendant did not answer the plaintiff's interrogatories until mid-July, *id.* at ¶

6(p), and, after repeatedly failing to produce documents on promised dates, finally

produced some documents in response to the plaintiff's April requests in mid- August. *Id.*

at ¶ 6(aa). The plaintiff responded to the defendant's discovery around the same time. *Id.*

at ¶ 6(y). The parties have communicated often by email and phone, and they have met

and conferred over discovery issues and deficiencies any number of times, with the

plaintiff repeatedly identifying problems and the defendant repeatedly asking for more

time. *See, e.g., id.* at ¶ 6 (d)(e)(g)-(n)(q)(s)(t)(v)(w)(x)(z)(bb)-(ii).

In the motion, the parties say they have been diligent, Doc. 30 at ¶ 6, but the facts

in the motion show they have taken a desultory approach that leisurely strolls towards

resolution. There have been gaps between emails and meet-and-confers, with little

obvious progress made. Aside from agreement on a protective order, discovery disputes

appear unresolved. *See, e.g., id.* ¶ 7(c). They have taken no depositions. *Id.* at ¶ 7(e).

From the recitation in the joint motion, the defendant has been dilatory.

At the very beginning of this case, the Court reminded the parties that "Scheduling

Orders will not be modified merely because the parties so agree. The Court expects the

parties to promptly move the case towards final resolution and to build in time for coping

with delays and obstacles, as they are a normal part of litigation." Doc. 6 at ¶ 9. Here, the parties point to no surprises or unexpected developments that are out of the ordinary in a case of this nature. It is the most common thing in the world to have disagreements about ESI protocols and responses to document requests. It is not common to delay serving discovery and to take months to talk about discovery disputes without reaching resolution even as discovery deadlines loom.

Despite all of this delay, the parties ask for several more months of discovery and a concomitant delay in trial. First, the Court will not consider a motion to continue a trial date without the written consent of the parties, LR 40.1(b), which counsel have not provided here. Doc. 30.

Even if they had complied with LR 40.1(b), the motion would be denied. The touchstone of good cause under Rule 16(b) is diligence. *Marcum,* 163 F.R.D. at 255; *accord, e.g., Tyndall v. Maynor*, 288 F.R.D. 103, 108 (M.D.N.C. 2013). That is absent here, as the facts show. And after the May 2025 civil term, at which this case is currently scheduled for trial, the Court does not have a civil term until November 2025. Accommodating the request for a September trial date, Doc. 30 at ¶ 11(a), would involve a special setting of court, complicating the work of Clerk's office staff, especially the jury administrator, and would interfere with the Court's criminal docket.

The motion to extend discovery deadlines and continue the trial will be denied.

### 3. Ending Undue Inefficiency

In ignoring the Scheduling Order, the parties have essentially proceeded as if they had been "left to their own devices," which "experience teaches [can lead to] undue

5

inefficiency, confusion, and prejudice." *See* Fed. R. Civ. P. 16(b) & advisory committee's note to 1983 amendments; *Cooper*, 2020 WL 5806484, at *2. That has certainly happened here.

In mentioned *supra*, the parties have taken inordinate amounts of time to meet and confer. "Rule 26(g) imposes an affirmative obligation to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 242 (M.D.N.C. 2010); *accord* LR 26.1(b)(1). The purpose of the meet and confer obligation is to "weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for the disputes that truly cannot." *Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-CV-33, 2018 WL 10068638, at *4 (W.D. Va. Oct. 31, 2018); *accord, e.g., Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 525–26 (S.D. W. Va. 2007). And if court action is needed, "conferral prepares both the court and the parties to efficiently and effectively resolve the dispute." *Graham v. Dhar*, No. 18-CV-274, 2019 WL 6999688, at *3 (S.D. W. Va. Dec. 19, 2019).

Here, the parties have met and conferred, slowly and many times over many months. Yet they have resolved almost nothing and have not brought any of their disputes before the Court. The purpose of requiring parties to meet and confer is to "curtail undue delay and expense," *Bonumose,* 2018 WL 10068638, at *4, not to cause delay or increase costs. Parties should make a sincere effort at resolving their discovery disputes and should rarely give up after one try. *See N.C. Mut. Life Ins. Co. v. Stamford Brook Cap., LLC*, No. 16-CV-1174, 2020 WL 13303324, at *1 (M.D.N.C. Dec. 16, 2020)

6

(noting that the rules "are intended to ensure that parties endeavor to cooperate in the discovery process and resolve disputes to the extent possible without involving court resources"). But at the same time, the parties and their counsel cannot take forever to "cooperate," fail to reach resolution, and then expect the Court to extend discovery deadlines and delay trial. Due diligence requires prompt attention to resolving discovery disputes along with attention to the deadlines in the scheduling order.

Micromanaging discovery is usually not necessary, as most litigants follow Scheduling Orders and counsel can be trusted to move their cases forward. It is also expensive for parties and a waste of scarce court resources.

But here, the parties are not taking seriously their obligations to move this case forward efficiently. Given those difficulties, the Court will assist. Despite the disruption to its other business and the unnecessary work this causes the court, close oversight is required unless and until counsel and the parties demonstrate an ability to manage discovery themselves and prepare for trial in a timely fashion.

After full consideration of the entirety of the record in this case, and based on its general experience with discovery, case management, and lawyers over the past decades, the Court will impose a number of specific deadlines for the parties to meet. By text order entered September 27, 2024, the Court already imposed a deadline for a submission on the ESI protocol and set the matter for status conference. Other deadlines and requirements are imposed herein. Further, the parties have engaged in settlement discussions for quite some time but have not yet engaged in mediation, Doc. 30 ¶ 8, so the Court will set a specific deadline for the first mediated settlement conference.

### 4. Additional Observations

The parties are reminded that under Federal Rule of Civil Procedure 37(a)(5)(A), when a motion to compel is granted or if the disclosure or requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," subject to narrow exceptions. Similarly, under Rule 37(a)(5)(B), if the motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," subject to similar exceptions.

Nothing in this Order is meant to force the parties to give up a substantially justified position on a discovery matter. If the parties have a real discovery dispute, they should bring it to the court's attention promptly, where it can be resolved promptly. This order insures that the parties have a clear understanding of what the Court means by the word "promptly."

Should it occur to a party or lawyer to ask for any deadline, requirement, or hearing date herein to be modified, they should, before asking, read Paragraph 9 of the Court's standard order, filed early in this case, in its entirety. *See* Doc. 6 at ¶ 9 (stating in part that "[t]he press of other legal work is not a valid basis for an extension of time or a continuance, as this case is just as important as other cases and clients. The Court often shortens the time for briefing related to motions to amend, discovery disputes, and other

8

non-dispositive motions. Litigants should plan accordingly.") The Court has other cases, and the parties have already taken up too much of the Court's limited time without justification. They are not entitled to demand that the Court set deadlines or hearings on a schedule convenient to them.

All that said, the Court realizes the parties have gotten themselves into a pickle and need help. The Court may be willing to modify some deadlines if that can be done without delaying trial. But the inconveniences and difficulties resulting from the parties' lack of diligence should fall on the parties, not the Court. They might consider, for example, shortened deadlines between disclosures or for briefing on dispositive motions, an abbreviated deposition schedule, waiving summary judgment motions, engaging in final trial preparation while a summary judgment motion is pending, or a combination of these things. The parties can confer further—expeditiously this time—and make another proposal to the Court by the date set herein, if they wish. But any such proposal or agreement does not excuse compliance with the other provisions of the Order. And as the Magistrate Judge may be spending his time resolving the parties' discovery motions in short order, the Court will handle the scheduling aspects itself, at least for the time being.

In the Court's discretion, it is **ORDERED** that:

1. If the defendant has not yet verified its answers to interrogatories, Doc. 30 at ¶ 6bb, the defendant **SHALL** do so no later than October 4, 2024.

2. As previously ordered, no later than October 4, 2024, the parties **SHALL** file a Joint Submission directed to an ESI Protocol containing either an agreed-upon proposed protocol or dueling proposed protocols. If the parties submit dueling

proposed protocols, the Joint Submission **SHALL** also contain an agreed-upon summary of the issues about which the parties disagree and a brief from each party in support of its position limited to 4000 words each. Upon filing, the matter will be referred to the Magistrate Judge for consideration.

3. Any motion to compel **SHALL** be filed no later than October 11, 2024, in the form of a Joint Submission containing an agreed-upon summary of the issues about which the parties disagree and a brief from each party in support of its position limited to 4000 words each. Upon filing, the matter will be referred to the Magistrate Judge for consideration.

4. If the plaintiff wants to obtain discovery from the two third parties referenced in ¶ 6ee of the joint motion, Doc. 30, then the plaintiff **SHALL** serve the subpoenas no later than October 4, 2024. Any motion to quash by the defendant **SHALL** be filed no later than October 8, 2024. If such motion is filed, the matter will be referred to the Magistrate Judge for consideration.

5. The parties **SHALL** immediately and forthwith update their answers to interrogatories and responses to document requests.

6. No later than October 18, 2024, the parties **MAY** file a Joint Submission directed to a request for a modified Scheduling Order that preserves the May trial date and allows at least 30 days from completion of summary judgment briefing before trial. If the parties know now that no dispositive motions will be filed and commit to that, a longer period of discovery is easier to allow, as the current schedule has

10

built in some time for that briefing and for consideration of such a motion. The current schedule remains in place unless and until it is modified by the Court.

7. The Clerk **SHALL** provide a copy of this Order to the mediator, Angela Gray, *see* Doc. 21, and the Mediator **SHALL** schedule a mediated settlement conference to take place no later than November 1, 2024. The parties **SHALL** cooperate fully with the mediator in scheduling and **SHALL** give this case priority. If no settlement is reached, the mediator shall not declare impasse but **SHALL** schedule another mediated settlement conference no later than March 31, 2025.

8. Beginning now, the parties **SHALL** meet and confer **at least once a day** through and until October 18, 2025, in an attempt to resolve these matters, including as to the third-party subpoenas and scheduling.

    a. If they have been unsuccessful as to the ESI Protocol by close of business October 2, 2024, counsel **SHALL** meet in person at the office of the EEOC in Raleigh on October 3, 2024, at 10 a.m. and work together on the Joint Submission, sharing their views and narrowing areas of disagreement as much as possible. If disagreements remain at close of business, they **SHALL** meet in person on October 4, 2024, at 9 a.m. at defense counsel's office in Raleigh and finalize the Joint Submission for filing that day.

    b. If they have been unsuccessful in resolving outstanding discovery issues by close of business October 8, 2024, counsel **SHALL** meet in person at the office of the defense counsel in Raleigh on October 9, 2024, at 10 a.m. and work together on the Joint Submission, sharing their views and narrowing

11

areas of disagreement as much as possible. If disagreements remain at close of business, they **SHALL** meet in person on October 10, 2024, at 9 a.m. at the office of the EEOC in Raleigh and finalize the Joint Submission for filing that day.

    c. The parties may agree to change the locations of the required in-person meet-and-confers but they may not forego the required in-person meetings unless and until the required Joint Submissions are filed.

    d. The parties **SHALL** discuss whether involving a mediator in resolving these scheduling and discovery issues would be appropriate.

9. As previously ordered, this matter is set for status conference on October 21, 2024, at 10 a.m. in Courtroom 3 in Greensboro. **ALL** counsel of record **SHALL** appear in person. Either the General Counsel, Chief Executive Officer, or other high-level executive of the defendant **SHALL** attend in person and a senior level managing attorney for the EEOC **SHALL** attend in person. The Court expects the mediation to have occurred or for the date to be settled by the time of the hearing.

This the 1st day of October, 2024.

 

_____
UNITED STATES DISTRICT JUDGE

12